**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| GERALDO DANIEL FRÍAS,<br><br>Petitioner,<br><br>v.<br><br>GARRETT J. RIPA, TODD LYONS, MARKWAYNE MULLIN, and TODD BLANCHE, all in their official capacities,<br><br>Respondents. | **Civ. No. 26-1374 (GMM)** |

### OPINION AND ORDER

Before the Court are a *Writ of Habeas Corpus* and *Petitioner's Emergency Motion for Temporary Restraining Order Preventing Transfer Outside of the District of Puerto Rico* ("TRO") submitted by Geraldo Daniel Frías ("Petitioner" or "Mr. Frías"). (Docket Nos. 1, 6).

Pursuant to the reasoning below, this Court **GRANTS** the TRO and **HOLDS IN ABEYANCE** the *Writ of Habeas Corpus* as to the remaining prayers for relief. This Court hereby **ORDERS** that the United States, its agencies, officers, employees, and all persons acting on their behalf shall not transfer Petitioner outside the District of Puerto Rico and that he be granted a bond hearing conducted by an Immigration Judge under the Department of Justice's Executive Office for Immigration Review ("EOIR").

Civ. No. 26-1374 (GMM)
Page -2-

## I.    BACKGROUND

Mr. Frías, a citizen of the Dominican Republic, entered Puerto Rico without inspection in 2016. (Docket No. 1 at 5). Mr. Frías married Maritjim Torres-Rodríguez ("Mrs. Torres"), a U.S. citizen, in San Juan, Puerto Rico on February 11, 2023. (Docket Nos. 1-3, 1-4). Thereafter, Mrs. Torres filed a Petition for Alien Relative ("I-130 Form") with the United States Citizenship and Immigration Services ("USCIS"), seeking to establish a qualifying familial connection required for Mr. Frías to apply for permanent legal residence. *See* (Docket No. 1-5). The I-130 Form was approved on January 9, 2025. (Id.). Mr. Frías also filed an Application for Provisional Unlawful Presence Waiver on April 8, 2025, which remains pending. (Docket No. 1 at 5). In the interim, Mr. Frías has lived in Puerto Rico without any reported criminal history. (Id. at 1).

On June 14, 2026, Mr. Frías was arrested by United States Immigration and Customs Enforcement ("ICE") agents during an enforcement operation. (Id.). Mr. Frías was detained in General Service Administration ("GSA") Guaynabo Immigration Center at the time he filed his habeas petition. (Id. at 3). As pled, the following federal officials (collectively, "Government") authorize Mr. Frías's detention: Garrett J. Ripa, Miami Field Office Director for ICE, who oversees Puerto Rico's Immigration and Removal

Civ. No. 26-1374 (GMM)
Page -3-

Operations conducted at the ICE Office in GSA Guaynabo Detention Facility; Todd Lyons, Acting Director for ICE; Markwayne Mullins, Secretary of Homeland Security; and Todd Blanche, United States Attorney General. (Id. at 4-5).

On June 15, 2026, Mr. Frías filed a *Writ of Habeas Corpus*. (Id.). Mr. Frías alleges his detention violates the Immigration and Nationality Act ("INA") and his procedural due process rights under the Fifth Amendment to the United States Constitution. (Docket No. 1 at 5-6, 8-9). Mr. Frías asks this Court to prevent his transfer to a facility outside of Puerto Rico and order him to either receive a custody redetermination hearing ("bond hearing") or conduct said bond hearing itself. (Id. at 6, 8-10).

To accompany Mr. Frías' habeas petition, Mr. Frías also filed the *TRO*. (Docket No. 6). He seeks an immediate injunction prohibiting the Government from transferring him out of the court's jurisdiction and requests a bond hearing while his *Writ of Habeas Corpus* is reviewed. *See* (id.).

At this emergency juncture, the Court only addresses whether to issue a TRO.[1]

---

[1] To the extent that this Court must review Petitioner's habeas petition – without deciding the merits of the habeas itself - to review Petitioner's prayer for a TRO, it has the jurisdiction to do so. *See* 28 U.S.C. § 2241(c)(3) (providing federal courts with jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or laws or treaties of the United States"). Nevertheless, this Court currently refrains from deciding the habeas. *See also* Aguilar v. U.S.

Civ. No. 26-1374 (GMM)
Page -4-

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) controls this Court's analysis. TROs can be issued with or without notice to the adverse parties.[2] Fed. R. Civ. P. 65(b)(1); Loc. Civ. R. 56.

Courts have interpreted the standard for issuing a TRO "the same as [those] for a preliminary injunction." Servicios Legales de P.R., Inc. v. Union Independiente de Trabajadores de Servicios Legales, 376 F. Supp. 3d 163, 166 (D.P.R. 2019) (citation omitted). To grant a TRO, a plaintiff must establish: (1) likelihood of success on the merits; (2) irreparable harm in the absence of immediate relief; (3) balance of equities favor relief; and (4) that relief is in the public interest. Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012). Petitioner bears the burden of meeting this test. Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

A TRO, like a preliminary injunction, is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank, 672 F.3d at 8-9 (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).

TROs are discretionarily granted. Sanchez v. Esso Standard

Immigr. & Customs Enf't, 510 F.3d 1, 11 (1st Cir. 2007).

[2] Notice has been provided. See (Docket No. 6 at 6); Muñiz-Negrón v. Worthington Cylinder Corp., No. 17-CV-1985-RAM, 2021 WL 5313002, at *2 (D.P.R. Aug. 16, 2021) (considering electronic filings as sufficient notice).

Oil Co., 572 F.3d 1, 14 (1st Cir. 2009). A decision is reversible, therefore, for abuse of discretion. Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981).

### III. APPLICATION OF LAW

Mr. Frías requests this Court issue a TRO to prevent his transfer and receive a bond hearing. After reviewing the factors, the Court finds that immediate relief is warranted.

A.    Likelihood of Success on the Merits

To assess whether Petitioner is likely to succeed on the merits, the Court must first determine under what legal basis Mr. Frías is detained.

The INA affords the Government the authority to detain certain noncitizens. Importantly, the INA differentiates between mandatory detention and discretionary detention. Only the latter provides a detainee with an entitlement to a bond hearing before an Immigration Judge. Two statutory provisions control this distinction: 8 U.S.C. §§ 1225 and 1226.

Section 1225 governs the detention of noncitizens who have not been "admitted" under the INA. As relevant here, Section 1225 provides for inspection of "[a]ll [noncitizens] . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States." 8 U.S.C. § 1225(a)(3). An "applicant for admission" is defined as "[a

Civ. No. 26-1374 (GMM)
Page -6-

noncitizen] present in the United States who has not been admitted or who arrives in the United States . . . ." Id. § 1225(a)(1). Notably, Section 1225(b)(2) marshals a mandatory detention scheme for noncitizens who are "applicant[s] for admission, if the examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a [for full removal proceedings]." Id. § 1225(b)(2)(A). Detention under Section 1225(b)(2) is generally mandatory, and the statute does not provide for bond hearings. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).

Section 1226, by contrast, governs the "usual removal process" and affords noncitizens procedural protections not available in expedited removal proceedings. See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020). Under Section 1226, a noncitizen who is "arrested and detained" faces three potential outcomes: the Attorney General "may continue to detain the arrested [noncitizen]"; the Attorney General "may release the [noncitizen] on bond of at least $1,500"; or the Attorney General "may release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a). Section 1226(a) therefore "establishes a discretionary detention framework for noncitizens." Gomes v. Hyde, No. 25-CV-11571, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025).

Civ. No. 26-1374 (GMM)
Page -7-

Where removal and detention of a noncitizen is discretionary, rather than mandatory, Section 1226(a) entitles a noncitizen to an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change. *See, e.g.* Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022); Doe v. Tompkins, 11 F.4th 1, 2 (1st Cir. 2021) (holding that the Government bears the burden of proving at an initial bond hearing held under Section 1226(a) that (1) a noncitizen poses a danger to the community based on clear and convincing evidence, or (2) the noncitizen poses a flight risk based on a preponderance of the evidence); Brito v. Garland, 22 F.4th 240, 246 (1st Cir. 2021) (same).

Excepted from the general rule of discretionary detention under Section 1226(a) are noncitizens involved in specific enumerated criminal activities. 8 U.S.C. § 1226(c)(1). Under Section 1226(c), in accordance with the Laken Riley Act enacted in January 2025, the Government is required to detain certain noncitizens who fall within the statute's criminal categories.

1.   Discretionary detention applies as to Mr. Frías

Petitioner entered the country without authorization in 2016. He has an approved I-130 Form and an application pending before USCIS for provisional unlawful presence. Mr. Frías lived in the

Civ. No. 26-1374 (GMM)
Page -8-

United States for nine years without any criminal record. Still, Mr. Frías was arrested and detained by ICE officials on June 14, 2026. *See generally* (Docket No. 1).

Mr. Frías' longstanding residence in the United States before his arrest strongly suggests that Section 1226(a), rather than Section 1225(b)(2), governs his detention. Given that Section 1226(a) governs detention for noncitizens who were "arrested and detained" while residing in the United States, interpreting Section 1225(b)(2) to apply to this same category would render it and amendments under the Laken Riley Act superfluous. *See* Gomes, 2025 WL 1869299, at *6-7 (outlining statutory interpretation of Section 1226(a) and Section 1225(b)(2) that demonstrates that an arrest and detention of noncitizens residing in the United States cannot fall under Section 1225(b)(2)). Such an interpretation would also conflict with the INA's structural distinction between arriving applicants for admission and noncitizens already present in the United States and arrested within the country.

Thus, at this preliminary stage, based on the allegations in the petition, Petitioner has demonstrated a substantial likelihood of establishing that Section 1226(a)'s discretionary detention framework governs his detention.

This interpretation aligns with the statutory distinction between arriving applicants for admission (that is, Section 1225)

Civ. No. 26-1374 (GMM)
Page -9-

and noncitizens who are already present in the United States and are later arrested and detained (that is, Section 1226). Applying Section 1225(b)(2) to this factual posture would blur that distinction and render Section 1226(a) redundant - contrary to basic principles of statutory interpretation.

Nor, with the information that this Court has before it, does Mr. Frías have any criminal record that would otherwise subject him to the mandatory detention exception outlined under Section 1226(c). *See generally* (Docket No. 1); Hernandez-Lara v. Lyons, 10 F.4th 19, 26-27 (1st Cir. 2021); Rodriguez-Diaz, 53 F.4th at 1196.

Accordingly, for purposes of the present motion only, the Court concludes that Petitioner has demonstrated a substantial likelihood that Section 1226(a) governs his detention.

2.    Petitioner is likely to succeed on the merits

Where removal and detention of a noncitizen is discretionary, rather than mandatory, Section 1226(a) entitles a noncitizen to: an initial bond hearing before a neutral decisionmaker; the opportunity to be represented by counsel and to present evidence; the right to appeal; and the right to seek a new hearing when circumstances materially change. Rodriguez-Diaz, 53 F.4th at 1202; *see also* Doe, 11 F.4th at 2.

From the record before this Court, it appears that Petitioner did not receive a bond hearing because of the immigration court's

Civ. No. 26-1374 (GMM)
Page -10-

deference to Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). (Docket No. 1 at 6). This administrative decision found that Immigration Judges do not have jurisdiction over custody redeterminations for noncitizens who were present in the United States without admission. Id. at 220-28.

This Court, however, is not bound by BIA interpretations that conflict with the statutory text or controlling circuit precedent. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400 (2024) (noting "agencies have no special competence in resolving statutory ambiguities," but "(c)ourts do").

That is, courts that have considered this issue have, after conducting persuasive, well-reasoned analyses of the statutory language and legislative history, rejected Matter of Yajure Hurtado's interpretation and routinely upheld the right to a bond hearing under circumstances akin to those of Petitioner. See, e.g., Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1285 (11th Cir. 2026); Barbosa da Cunha v. Freden, 175 F.4th 61, 95 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713, 734 (6th Cir. 2026). In the same vein, courts in this district have similarly rejected the adoption of a broad interpretation of 1225(b)(2) that would, consequently, generate overlap with Section 1226(a) as to erroneously deny the noncitizen's right to a bond hearing. See, e.g., Calderon-Santana v. Gonzalez-Ramos, No. 26-

**Civ. No. 26-1374 (GMM)**
**Page -11-**

CV-1247-SCC (D.P.R. Apr. 29, 2026); Mari v. Ripa, No. 26-CV-1172-ADC (D.P.R. Mar. 24, 2026); Paula v. Gonzalez, No. 26-CV-109-MAJ (D.P.R. Feb. 17, 2026); Cruz v. Gonzalez, No. 26-CV-1036-PAD (D.P.R. Jan. 23, 2026).

The Court finds the reasoning of those decisions persuasive. Petitioner has demonstrated a substantial likelihood of success on the merits of his claim that if Section 1226(a) governs his detention, he is entitled to the afforded bond hearing under that statute.

B.   Irreparable Harm

Next, irreparable harm. When evaluating the expedition of equitable relief, "[an] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (*quoting* Cavanaugh v. Looney, 248 U.S. 453, 456 (1919)).

The "irremediable" injury would be threefold for Mr. Frías: detention; removal from this Court's jurisdiction pending Mr. Frías's habeas corpus proceedings;[3] and the imminent consequences

---

[3] Were Mr. Frías to be transferred before the issuance of this *Opinion and Order*, this Court would still retain jurisdiction to order his return because he was under custody in Puerto Rico when his habeas petition was filed. *See* Ozturk v. Hyde, 136 F.4th 382, 387 (2nd Cir. 2025) (upheld the return of a Petitioner to the initial detention venue upon proper filing of a habeas petition).

Civ. No. 26-1374 (GMM)
Page -12-

that such removal would have on his person and his rights.

The harm posed in transfer without a bond hearing is substantial. Mr. Frías faces a prolonged period of detention, separating him from his spouse and depriving him of his liberty. Zadvydas v. Davis, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment . . . lies at the heart of the liberty that the [Fifth Amendment Due Process] Clause protects.").

Courts possess authority under the All Writs Act, 28 U.S.C. § 1651(a), to preserve their jurisdiction while a habeas petition remains pending. See Nken v. Holder, 556 U.S. 418, 426 (2009). Maintaining Petitioner within the District of Puerto Rico preserves the status quo and ensures that the Court may provide meaningful relief should the petition ultimately succeed.

C.    Balance of Equities and Public Interest

The remaining preliminary injunction factors - the balance of equities and the public interest - "merge when the Government is the opposing party." Id. at 435.

The balance of equities favors Petitioner where he has demonstrated a substantial likelihood that the Government's interpretation of the detention statutes is incorrect and that continued detention without access to the procedures afforded under Section 1226(a) may be unlawful.

The Court recognizes the Government's substantial interest in

Civ. No. 26-1374 (GMM)
Page -13-

enforcing the immigration laws. At the same time, the public has a significant interest in ensuring that detention decisions are implemented in accordance with the statutory framework established by Congress and the procedural protections required by law. Neighborhood Ass'n of The Back Bay, Inc. v. Fed. Transit Admin., 407 F. Supp. 2d 323, 343 (D. Mass. 2005), aff'd, 463 F.3d 50 (1st Cir. 2006).

## IV.  CONCLUSION

Based on the present record, Petitioner has demonstrated a likelihood of success on the merits, irreparable harm if interim relief is denied, and that the balance of equities and public interest favor preserving the status quo pending further proceedings.

Accordingly, this Court **GRANTS** the TRO and **HOLDS IN ABEYANCE** the *Writ of Habeas Corpus* as to the remaining prayers for relief.

The Court **ORDERS** Petitioner to execute summons against Defendants on or by June 22, 2026.

The Court further **ORDERS** that the United States, its agencies, officers, employees, and all persons acting on their behalf shall not transfer Petitioner outside the District of Puerto Rico.

The Court further **ORDERS** that Petitioner be granted a bond hearing before an Immigration Judge, no later than June 24, 2026 at 5:00 P.M. The Government shall inform on or by June 26, 2026 at

**Civ. No. 26-1374 (GMM)**
**Page -14-**

5:00 P.M. whether such bond hearing has been held and its outcome.

The Government must also file a pleading responsive to Petitioner's *Writ of Habeas Corpus* on or by June 30, 2026 at 5:00 P.M.

This Order grants only temporary injunctive relief and does not adjudicate the merits of the *Writ of Habeas Corpus*.

This Court retains jurisdiction to enforce its decision.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on June 17, 2026.

/s/ Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE